# MARYLAND REPORTS.

OCTOBER TERM, A. D., 1870.

HENRY JANES *vs.* EDWARD F. JENKINS.

*Easement and Servitude— What is not a Breach of a Covenant of Special Warranty—Implied grant.*

The owner of two adjoining lots, which may be designated as the East and West lots, leased the former for the renewable term of ninety-nine years, at a certain yearly rent, and in the lease covenanted that the lessee should have the right and privilege to make openings and place lights in the wall which he contemplated erecting on the western line of the property leased. The wall was erected and openings were made and lights placed therein, which overlooked the West lot. Subsequently the lessor conveyed the reversion in the East lot and premises to the lessee thereof, in fee, and by this deed were granted with the lot all buildings and improvements thereon erected, " and all and every the rights, alleys, ways, waters, *privileges, appurtenances* and *advantages to the same belonging, or in anywise appertaining.*" Afterward the owner of the West lot conveyed the same, in fee, to a third party, the deed containing a covenant of special warranty. On an action brought by the vendee of the West lot against the vendor for an alleged breach of the covenant of special warranty, it was HELD :

1st. That the conveyance to the vendee of the East lot, passed the full right to the free use and enjoyment of the lights in the wall as they then existed, as an incident and appurtenance to the land conveyed ;, and as appurtenant to the premises will pass therewith to all successive owners of the property.

2d. That the vendee of the West lot took it with the servitude annexed for the benefit of the East lot, and the existence of this servitude, and

1          v. 34

the enjoyment thereof by the owner of the East lot, constituted no breach of the covenant of special warranty.

Whenever an owner has created and annexed peculiar qualities and incidents to different parts of his estate, (and it matters not whether it be done by himself, or his tenant by his authority,) so that one portion of his land becomes visibly dependent upon another for the supply or escape of water, or the supply of light and air, or for means of access, or for beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee as accessorial to the beneficial use and enjoyment of the land.

APPEAL from the Circuit Court for Baltimore County.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Arthur Geo. Brown* and *Geo. Wm. Brown*, for the appellant.

It does not appear that the appellant ever examined the house before he purchased it, or saw or knew of the existence of the windows which overlook it, or knew of the right of Joseph W. Jenkins to open and keep them open. If such were the facts, and if they were material, the appellee should have pleaded them. The appellant was not bound to make any examination either of the title or of the premises, and had a right to rely on the warranty of the appellee, and the breach set out in the declaration was a clear infraction thereof.

As to the meaning of a covenant of special warranty, see *Act of 1864, ch. 252, secs. 1, 3, 9, &c.; Rawle on Covenants,* 203; *Irvine vs. Irvine, 9 Wall.,* 617, 625; *Leary vs. Durham,* 4 *Georgia,* 601; *Addison's Torts,* 835.

Even if it could be presumed that the appellant knew of the existence of the windows at the time of his purchase, that fact could make no difference. The doctrine of ancient lights by prescription, does not prevail in cities in Maryland, nor in this country generally, and these lights were not ancient; and in the absence of a special grant, a man may build as he pleases on his own land, even though by so doing he closes

his neighbor's windows. Therefore the mere existence of overlooking windows does not give notice of any right which would prevent the improvement of adjoining property. *Cherry vs. Stein*, 11 *Md.*, 1; *Wash. on Ease.*, &c., 498 to 506.

No forcible eviction was necessary to entitle the appellant to sue on the covenant. The existence of a continuing adverse right under a prior grant from the appellee, coupled with facts stated in the declaration, constituted a breach for which the appellant had a right to claim damages. *Platt on Covenants*, (3 *Law Lib.*,) 305, 332; *Rawle on Covenants*, 224, 241, 245 to 255, and cases cited.

*Arthur W. Machen*, for the appellee.

The lights, or openings in question, being in existence at the time of the appellant's purchase of the servient tenement, and the easement being of such a character that it was necessarily *apparent and continuous*, the purchaser took the property *as it was*, and the covenant of warranty only *warranted* it as it was. So that, if the appellee were himself still the owner of the East lot, he, or his lessees, would be entitled to continue to enjoy the lights, notwithstanding his deed. Such a right does not depend upon the antiquity of the enjoyment as its support, nor upon anything peculiar to the doctrine of lights. It rests upon the broad and firmly established principle that where, during the time that two tenements are held in one ownership, one of them is made subject to any visible or discernible easement which is continuous in its nature, a subsequent severance of the ownership does not in any manner affect the easement, nor deprive the possessors of the dominant tenement of the enjoyment of it. An easement of this class is *physically annexed* to the dominant tenement. Drains, *windows*, visible and defined ways, support derived from an adjacent building—as where several houses have been built together in a row, are all instances of this species of permanent and self-asserting easement. *Richards vs. Rose,*

9 *Exch.*, 218; *Pyer vs. Carter*, 1 *H. & Norm.*, 916; *Glave vs. Harding*, 3 *H. & Norm.*, 944; *Pearson vs. Spencer*, 1 *Best & Smith*, 571; *Gale on Easements*, (4th ed.,) 90; *Washburne on Easements*, 32 et seq.

The doctrine was recognized in *Cherry vs. Stein*, 11 *Md.*, 24, 25.

And it is further settled, that "those things are *apparent* which would be so, upon a careful inspection by a person ordinarily conversant with such matters." *Gale on Easements*, (4th ed.,) 89, 91; *Pyer vs. Carter*, 1 *H. & N.*, 922.

If, therefore, the house of Mr. Joseph W. Jenkins is in point of fact, entitled to derive light through the openings in question from the adjacent lot, it is plain that the easement rests upon the foregoing principle; and the purchaser of the adjacent lot is bound to take notice of it, and it is impossible to say that there is anything in the case which can be construed into a breach of the covenant of special warranty.

To sustain an action on a covenant of warranty, it is necessary to aver an *eviction.* And no eviction is alleged in the present declaration, and it is apparent, from the nature of the case, that none could be averred. *Rawle on Covenants*, 308, (1st ed., 210;) *Parish vs. Whitney*, 3 *Gray*, 516; 1 *Smith's Lead. Cas.*, 174, *marg.*, (201, 2 top;) *Rawlings vs. Adams*, 7 *Md.*, 26.

The case is not within the scope of the covenant of special warranty.

ALVEY, J., delivered the opinion of the Court.

The questions in this case arise upon a demurrer to the declaration of the plaintiff below, who is the appellant in this Court. The action was one of covenant, brought on a supposed breach of a covenant of special warranty, contained in a deed from the appellee to the appellant, dated the 29th of April, 1867, for a house and lot on Monument street, in the city of Baltimore.

It is shewn by the declaration, that the appellee was owner in fee of two adjoining lots, which may be designated as East

and West lots, fronting on the south side of Monument street, and that, on the 4th of May, 1860, he leased the East lot to Joseph W. Jenkins, for the renewable term of ninety-nine years, at the clear yearly rent of $486; and in which lease was a covenant that the lessee should have the right and privilege to make openings and place lights in the wall which he contemplated erecting on the western line of the property leased; such lights to be at least five feet above any floor over which they might be opened. The wall was erected, and, in pursuance of the privilege granted, openings were made and lights placed therein, which overlooked the West lot that was subsequently conveyed to the appellant.

After the erection of the wall, and placing therein the windows, the appellee, by deed of the 29th of April, 1863, conveyed the reversion in the East lot and premises to Joseph W. Jenkins, in fee, for the consideration of $8,100, and all rent then in arrear. By this deed, were granted with the lot all buildings and improvements thereon erected, made or being, "and all and every the rights, alleys, ways, waters, *privileges, appurtenances and advantages to the same belonging, or in any wise appertaining.*"

The covenant of special warranty contained in the deed of the 29th of April, 1867, to the appellant, for the West lot, is to the effect that the appellee shall forever warrant and defend the property, conveyed to the appellant, against the claims and demands of the grantor, and all persons claiming by, through or under him. The breach alleged, is the existence of the windows in the wall erected on the western line of the East lot, overlooking the West lot conveyed to the appellant, "whereby and in consequence whereof the said plaintiff has been molested and hindered in, and excluded from, the free and unobstructed use, possession, occupation and enjoyment of the said property conveyed to him as aforesaid, and said plaintiff, in consequence of the premises, has likewise been, upon notice from said Joseph W. Jenkins, hindered and prevented from building up to or near to the easternmost line of

his said property, and has also been prevented from selling or disposing of the same for its proper value, in consequence of said easement and incumbrance thereon."

Upon these allegations, being admitted by the demurrer, two questions are presented : First, what passed to Joseph W. Jenkins, the grantee of the Eastern lot and premises; and, secondly, if the owner of that lot be entitled to the enjoyment of the lights placed in the wall on the Western boundary thereof, does the covenant of special warranty afford the appellant, the owner of the Western lot, a remedy in damages for the existence of such an easement in his premises ?

1. As to the first of these questions, it must be observed that the lights were placed in the wall at a time when the appellee was owner of the reversion in the lot, and that it was done by his express authority and agreement for a consideration. He could not, therefore, during the continuance of the lease, and as owner of the adjoining lot, interfere with or prevent the full and free enjoyment of the easement thus created. . But, by the subsequent conveyance of the reversion, whereby the leasehold estate was merged, did the right to this easement, or *quasi* easement, cease to exist? The lights were then in existence, and were used and enjoyed as appurtenant to the Eastern lot, and being placed in the wall by the authority and under the grant of the appellant, while he was owner of the reversion; this is not different, in principle, from the cases of the owner of two adjoining heritages, selling one, or of the owner of an entire heritage, selling and granting part; in which the law would seem to be well settled, that by the grant of the adjoining heritage, or part of an entire heritage, there will pass to the grantee all such continuous and apparent easements as may be, at the time of the grant, in use for the beneficial enjoyment of the parcel granted; and this by implication, unless words are used in the grant, manifesting an intent to exclude them. Whenever, therefore, an owner has created and annexed peculiar

qualities and incidents to different parts of his estate, (and it matters not whether it be done by himself, or his tenant by his authority,) so that one portion of his land becomes visibly dependent upon another for the supply or escape of water, or the supply of light and air, or for means of access, or for beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee, as accessorial to the beneficial use and enjoyment of the land. *Addison on Torts,* 80 *and* 81; *Ewart vs. Cochrane,* 7 *Jur. N. S.,* 925; *Pyer vs. Carter,* 1 *H. & N.,* 916; *Hall vs. Lund,* 1 *H. & Colt,* 676. And so the law is explicitly announced, upon full review of the authorities, both English and American, by the Court of Appeals of New York, in the case of *Lampman vs. Milks,* 21 *N. Y.,* 505; it being there decided, that wherever the owner of land has, by any artificial arrangement, created an advantage or incident for the benefit of one portion, to the burdening of the other, upon a severance of the ownership, the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted. See also the case of *United States vs. Appleton,* 1 *Sumner,* 492, where the same principle is fully recognized and adopted by Judge STORY.

Mr. ADDISON, in his very admirable work on the *Law of Torts, at page* 90, has stated the law on this subject with great clearness and precision. He says: " If the owner of a house and the surrounding land sells the house without the land, a free passage for so much light and air as may be reasonably necessary for the beneficial occupation and enjoyment of the house is impliedly granted by the vendor across his own adjoining unsold land, unless the privilege is excluded by the express terms of the conveyance. The vendor, therefore, cannot build on his own adjoining land so as to obstruct the access of light and air to the windows of the house. Hav-

ing granted the house, he can do no act in derogation of his own grant. And if he sells and conveys the house to one man, and the adjoining land to another, the purchaser of the adjoining land cannot build so as to darken or obstruct the windows of the house, although such adjoining land may have been described as building-land, and the intention to build thereon may have been known to the purchaser at the time he purchased it." The author refers to the cases of *Palmer vs. Fletcher*, 1 *Lev.*, 122; *Canham vs. Fisk*, 2 *Cr. & J.*, 128, and *Swansborough vs. Coventry*, 9 *Bingham*, 305, to which he might have added the cases of *Nicholas vs. Chamberlain*, *Cro. Jac.*, 121; *Robbins vs. Barnes*, *Hob.*, 131, and *Cox vs. Matthews*, 1 *Ventr.*, 237, as fully sustaining the principle stated by him.

And so, "where the shell of an unfinished house was sold," continues the same author, "with openings in the wall for the insertion of windows and doors, it was held that the vendor could not, after the sale and conveyance of the unfinished structure, build on his own adjoining land, so as to obstruct the access of light and air to the spaces left for windows, or place obstacles in the way of the exercise of a right of way to the apertures intended for doors. And when two separate purchasers buy two unfinished houses from the same vendor, and at the time of the purchase the spaces for windows and doors are marked out, this is a sufficient indication to the purchasers. of the rights they are respectively to enjoy; so that they cannot subsequently interfere with each other's enjoyment of the windows and doors as marked out and impliedly agreed upon at the time of the sale." *Compton vs. Richards*, 1 *Price*, 27; *Glave vs. Harding*, 27 *Law J., Exch.*, 286.

In the case of *Ewart vs. Cochrane*, 7 *Jur.*, N. S., 925, in the House of Lords, where an owner of two adjoining properties conveyed them to different persons, and one of the properties had enjoyed for a considerable time the privilege of a certain drain into the other, and the drain having been

stopped by the owner of the premises receiving the drainings, Lord Chancellor CAMPELL, in delivering the leading opinion, said, "I consider the law of Scotland, as well as the law of England, to be, that when two properties are possessed by the same owner, and there has been a severance made of part from the other, anything which was used, and was necessary for the comfortable enjoyment of that part of the property which is granted, shall be considered to follow from the grant if there be the usual words in the conveyance. I do not know whether the usual words are essentially necessary, but where there are the usual words I cannot doubt that that is the law;" and he refers to the case of *Pyer vs. Carter*, 1 *H. & N.*, 916.

In the case before us the grant not only contained the usual words, but was explicit in granting the lot with all the rights, privileges, appurtenances, and advantages thereto belonging, or *in anywise appertaining.* It is clear, however, upon the authorities, that no special terms in the conveyance are necessary, but, as was said by the Court in *Robbins vs. Barnes*, *Hob.*, 131, the premises "must be taken as they were at the time of the conveyance." See, also, *Thayer vs. Payne*, 2 *Cush.*, 327.

The principle here asserted is well founded in the common law, and has been recognized and impliedly approved by this Court in the case of *Cherry vs. Stein*, 11 *Md.*, 1. In that case the English doctrine in regard to ancient lights was rejected as being inapplicable here, because if adopted it would greatly interfere with and impede the rapid changes and improvements constantly going on in our cities and villages. That doctrine, however, while founded in the presumption of grant, is evidenced and established by use and time only. But not so in the case of a common proprietor conveying two adjoining tenements to different persons, and the first granted tenement is at the time in the full enjoyment of windows overlooking the other. In such case the question is what passed by the grant or conveyance? The grantor being the

owner of both tenements, could, for the benefit of the tenement granted, fix upon his remaining tenement any servitude he thought proper. That being so, the relative rights and incidents of the two tenements must be taken as fixed at the time of severance by the first grant; and, unless restrictive words are used, each will retain, as between the two, all such incidents and easements as are then openly and visibly attached to and used by it. And there is no exception to this rule in regard to light and air; though the right to light and air thus acquired is founded, as we have observed, in very different principles from those upon which the rejected doctrine of ancient lights is founded. The distinction is most obvious.

We think, therefore, that it is plain, the conveyance to Joseph W. Jenkins passed the full right to the free use and enjoyment of the lights in the wall as they then existed, as an incident and appurtenance to the land conveyed; and as appurtenant to the premises will pass therewith to all successive owners of the property. And as the grantor, after the conveyance, could not himself lawfully hinder or obstruct the light and air from those windows, and thus derogate from the grant, it is clear he could not transfer to the appellant any right to do so, and, consequently, the latter took the Western lot with the servitude annexed for the benefit of the Eastern lot. *Story vs. Odin,* 12 *Mass.,* 157.

2. Then, as to the second question, whether the existence of this servitude or burthen upon the property sold to the appellant, and the enjoyment thereof by the owner of the eastern lot, constitute a breach of the covenant of special warranty? This depends upon the apparent and ostensible condition of the property at the time of sale. And as the wall had been erected, and the lights therein were plainly to be seen when the appellant purchased the property overlooked by them, it is but rational to conclude that he contracted with reference to that condition of the property, and that the price was regulated accordingly. The parties, in the absence of

any thing to the contrary, are presumed to have contracted with reference to the then state and condition of the property; and if an easement to which it is subject be open and visible, and of a continuous character, the purchaser is supposed to have been willing to take the property, as it was at the time, subject to such burthen. That being so, the covenants in the deed must likewise be construed with reference to the condition of the property at the time of conveyance. The grantor, by his covenant, warranted the premises as they were, and by no means intended to warrant against an existing easement, which was open and visible to the appellant, and over which the former had no power or control whatever. To construe the covenant to embrace such subject would most likely defeat the understanding and intention of the parties; certainly of the grantor. *Washb. on Eas.*, 68.

In the case of *Patterson vs. Arthur*, 9 *Watts*, 154, the question was whether an existing highway was an incumbrance, within the meaning of the covenant against incumbrances on the land sold, and the Court said, "if there be a public road or highway, open and in use upon it (the land sold) he (the purchaser) must be taken to have seen it, and to have fixed, in his own mind, the price that he was willing to give for the land, with a reference to the road, either making the price less or more as he considered the road to be injurious or advantageous to the occupation and enjoyment of the land;" and it was considered that the covenant did not embrace such an incumbrance. So we think here, the covenant of special warranty in the deed from the appellee to the appellant, does not embrace the easement complained of. The judgment of the Court below will therefore be affirmed.

*Judgment affirmed.*

(Decided 3d February, 1871.)