# TALCOTT ELIASON *vs.* JAMES K. P. GROVE.

*Easements—Right to Use Well of Water Upon an Adjoining Lot—
Implied Grant of Easements—Purchase of Property Subject to
Continuous and Visible Servitude—Obstruction of Easement—
Damages.*

When land is sold to which clearly visible easements and privileges
are annexed which are necessary for the reasonable enjoyment of the
land conveyed, there is an implied grant of the same and correspond-
ing servitude imposed upon the land retained by the grantor.

If the owner of two adjacent lots of ground uses one for the benefit of
the other, in such a manner that if the lots had been owned by dif-
ferent persons, it would be presumed that an easement existed in
favor of one parcel and a servitude imposed upon the other, then,
upon the conveyance by the owner of the former lot the purchaser
would be entitled to the easement as against the other tenement,
provided the easement be continuous, apparent and necessary for
the reasonable enjoyment of the property granted.

If, in such case, the vendor does not intend that the former mode of
using the two lots should continue, there should be a provision to
that effect in the deed, or a change made in the condition of the
premises before the sale.

The owner of two adjacent town lots erected thereon a double dwell-
ing-house. In the rear there was a well of water on or near the di-
vision line between the yards and a gate in the fence near the well.
The owner sold the lot on which the well was not located, and after-
wards the other lot. By *mesne* conveyances the two lots became
vested in plaintiff and defendant respectively, the pump in the well
being in defendant's yard. None of the deeds mentioned the use of
the well. The well was used in common by the occupants of both
houses for more than twenty years, and the fact of such use was ap-
parent upon an inspection of the property. A few years after de-
fendant came into possession of his lot, he closed the door between
the two yards, and refused to allow plaintiff to have access to the
well in the way formerly used. In an action to recover damages,
*Held*, that if the jury found that the use of this well was necessary
for the reasonable enjoyment of plaintiff's property, and had been
used by him and those under whom he claimed as above stated, and
if, at the time defendant purchased his lot, the use of the well and
the condition of the premises were such as to give notice to the de-

fendant of the existence of this servitude, then the plaintiff is entitled to recover.

In an action for obstructing plaintiff's easement to take water from a well on defendant's land, the plaintiff is not entitled to recover punitive damages, unless there be malice on the part of defendant.

Appeal from the Circuit Court for Washington County (STAKE, J.)  At the trial the Court below granted the defendant's prayers instructing the jury to find for the defendant and rejected the plaintiff's prayers, which were as follows :

1st. If the jury find from the evidence that a certain W. H. H. Miller, in the year 1856, became possessed of a lot of land in Hancock, Washington County, and that at the time and before he became the owner of said lot there was a well of water standing thereon, and that while the said Miller owned the said lot he built thereon a double brick house, and that the said well was used by said Miller and his tenants, and that on or about Nov. 22, 1856, the said Miller sold the western half of said lot to a certain Evans, and that on or about the 12th day of July, 1859, the said Evans sold the said lot to James B. Delaplane, and that said Delaplane died leaving a widow and children, and the said widow and children rented the said house and lot to the plaintiff; and if the jury find that the said well stood on or near the line of division between the lot sold by the said Miller and the lot retained by him, and that said well was used by the occupiers of both lots after the sale aforesaid and continued so to be used from said year 1856 ; and if the jury find that on or about May 7th, 1864, the said Miller sold the east part of said lot to Henry Fite, and that the said Henry Fite, on or about March 11th, 1887, sold the said house and lot to the defendant ; and if the jury find that at the time of the first sale from Miller to Fite and at the time of the sale from Fite to the defendant the said well was used by the occupiers of the west half of the original lot, and that there was an approach to said well from the Delaplane lot through a doorway, being the doorway testified to

by the witnesses; and if the jury further find that the defendant placed a false door on the east side of the doorway which was used to the approach of said well as aforesaid and shut off the plaintiff from the use of the said approach as it had been used and the use of the water of said well, then the verdict of the jury should be for the plaintiff.

2nd. If the jury believe from the evidence that the plaintiff, the owner or occupiers of the Delaplane property in Hancock, Maryland, have been using the water of the well and the right of way to and from the same under a claim of right, and adversely to the defendant and the owners and occupiers of the Grove property for a period of more than 20 years before the injury complained of; and further find that the defendant has hindered and obstructed the plaintiff in the approach to said well and the use of the water therefrom by the erection of a door or barricade, then the jury are instructed that the said continuous user by the plaintiff and the owners and occupiers of the Delaplane property since 1856 constitute a prescriptive right to use the water of the well and the right of egress and ingress to and from the same.

3rd. If the jury find from the evidence that the defendant at the time of blocking up and obstructing the doorway which was used as the approach to the well on his premises, knew that the plaintiff had a right to use and pass over and through said doorway without interruption or molestation so as to get to the said well and get water therefrom, then the jury are not confined to the actual damages sustained by such obstruction nor the inconvenience and expense put upon the plaintiff in order to get water for himself and family elsewhere, but may find such further damages as the facts and circumstances accompanying the acts of the defendant may warrant, taking also into consideration the motives of the defendant.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and RUSSUM, JJ.

*Alexander Armstrong* and *T. A. Poffenberger* (with whom was *T. A. Brown* on the brief), for the appellant.

It is most apparent that the well was erected or if it existed before, was continued by Dr. Miller for the benefit of both of the properties upon which he had erected the brick houses; the well probably was incident to the property when Dr. Miller bought and took title. When Miller conveyed to Evans it is equally true that the right to the use of the water of the well went to him. Miller expressly says so. And when Evans conveyed to Delaplane he took the right to the use of the well, and according to the testimony the only time that there was any difficulty about going to the well was 29 years ago between servants, and when Dr. Delaplane was notified about it he at once asserted his rights and demanded that the interference be abated.

Here was a valuable right connected with both of these properties; known to all, as well to those living in the properties as those without. The Court below rejected the prayers that were offered by the plaintiff to sustain the rights which he believed existed in favor of the Delaplane property and the tenant thereof, and instructed the jury that there was no testimony legally sufficient to enable the plaintiff to recover. We think the Court erred in these rulings. The case at bar presents itself stronger than any mentioned in the books, and for that reason stands in a class of its own. Here the owner of the servient tenement, and of the entirety, testifies that he built the houses, having in view the establishment and preservation to the plaintiff the very right for which the plaintiff is contending—the right of all owners and occupiers of both premises to obtain water at the well. His testimony is to the effect that the well and the right to get water is a right common to all the owners and occupiers of the several parts. He says, and he is not contradicted, that the houses were constructed in the peculiar manner shown in the diagram, so that the "*occupants of both sides of the house could have free access to the well for the use of the water,*" and that he lived in the west side and went

through the gate for water to the east half. *Burns* v. *Gallagher*, 62 Md. 462; *Payne* v. *Chandler*, 19 L. R. A. 100; *Mitchell* v. *Seipel*, 53 Md. 251.

The privilege or right granted must be of value to the estate granted which the grantee has estimated as an advantage to the estate and paid for in his purchase. *Janes* v. *Jenkins*, 34 Md. 10; *Payne* v. *Chandler*, 19 L. R. A. 100.

Regard must be had to the state of the premises at the time of the conveyance. (*Burns* v. *Gallagher*, 62 Md. 410). In the absence of anything to the contrary it is presumed that the parties constructed with that end in view. (*Janes* v. *Jenkins*, 34 Md. 11). We must try and ascertain the true intent of the parties from all the surrounding circumstances. (*Payne* v. *Chandler*, 19 L. R. A. 102). The question then arises, did Dr. Delaplane have a reasonable right to conclude from the manner in which the houses were constructed and the way in which Dr. Miller, the grantor, used the premises that he was purchasing a right to get water at the well? Was there any apparent artificial and visible arrangement that would reasonably have led him to believe or conclude that he was, in order to enjoy his purchase, to exercise his rights as had been exercised by the owner of the entirety? Did the grantor, Dr. Miller, have in mind the conveyance of any such rights where it clearly appears that such was his intention?

If deprived of the use of the water for domestic purposes, did Dr. Delaplane, from the heirs of whom the plaintiff leased the property, lose that which was an open and visible appurtenance to his property and which represented a part of the consideration paid by him? Could he have had the full enjoyment of the property as it then existed and as was contemplated by the grantor, without the use of the water from the well and the right of entry to obtain the same?

The second prayer of the plaintiff is based upon the principle of the acquisition of the right to the use of the water by prescription.

The evidence shows that the owners and occupiers of the

west half of the property have had the continuous and un-
interrupted use of the water from the well and the right of
way thereto for nearly forty years, and that their user was
under a claim of right. Dr. Delaplane purchased the west
half of the property on the 12th day of July, 1859; the
east half of the property was sold to Henry Fite on October
16th, 1864. For more than five years the plaintiff used the
property of Dr. Miller for the procurement of water with
his full knowledge and consent. Having the adverse user
and the same being known to the owner of the property
and it having gone on continuously for more than twenty
years the right is firmly established. The prescriptive right
can be gained against the owner of the property even though
the property itself is in the occupancy of tenants; provided
the owner knows and acquiesces in the user at the start.
*Washburn on Easements*, 130, 155, 180, 187. That such
rights are acquired by prescription can hardly admit of any
question. We cite the following additional authorities:
*Elliott* v. *Rhett*, 57 Am. Dec. 769; *Green* v. *Collins*, 40 Am.
Rep. 537; *Kentz* v. *McCune*, 99 Am. Dec. 89.

*J. Clarence Lane* (wth whom was *Henry H. Keedy, Jr.*,
on the brief), for the appellee.

The plaintiff's contention is that the right to get water
from the defendant's well is an easement which belongs to
the property occupied by him as against the property owned
by the defendant. This contention is based upon the claim
that both properties formerly belonged to one person, W.
H. H. Miller, who lived in one and rented the other; that
the well, situated on the side now owned by the defendant,
was used in common by both sides; that the said Miller
first sold the part occupied by the plaintiff, and that in the
grant of that also passed the implied grant of the right to
get the water at the well, and that the right has been exer-
cised for more than twenty years.

This raises two legal questions. 1st. That presented by
the plaintiff's first prayer, whether the right claimed by the

plaintiff was an easement which passed as an implied grant
by the conveyance of the property from W. H. H. Miller
to Evans and from Evans to the landlord of the plaintiff;
and 2nd. That presented by the plaintiff's second prayer,
whether there has been such a user of the water of the well
and the right of way to it for more than twenty years as to
ripen into a right in the plaintiff with which the defendant
cannot interfere.

*First.* As to the implied grant. A long list of cases of a
most interesting but contradictory character may be found
discussing and deciding questions of implied grant and im-
plied reservation of easements. The now settled Eng-
lish rule in favor of sustaining the passing by implication of
easements which are apparent, continuous and reasonably
necessary for the use of the property granted, and of restrict-
ing the reservation of easements by implication to those of
strict necessity has been adopted in Maryland. *Janes* v.
*Jenkins*, 34 Md. 1 ; *Mitchell* v. *Seipel*, 53 Md. 251 ; *Burns*
v. *Gallagher*, 62 Md. 462.

The first case above cited is one of implied grant of the
easement of unobstructed light ; the second is a denial of
the existence of an easement, by implied reservation, of a
way in favor of the grantor ; the third is a case of estoppel
by way of analogy to the principle of implied grant. None
of these cases discuss or decide what will constitute appar-
ent and continuous easement, or whether non-continuous
easements will pass by implied grant. *Washburn on Ease-
ments*, p. 106. " The distinction, however, is generally rec-
ognized in the American decisions between continuous and
non-continuous easements, and the general rule is that such
as are non-continuous will not pass by an implied grant.
The most important of the non-continuous easements is the
right of way. It has been suggested that a way, if prop-
erly fenced off and marked out, so as to show plainly that
it constitutes a servitude, may pass by implied grant. Still
the majority of the decisions hold a right of way to be a
non-continuous easement and not the subject of an implied

grant. And so of a right to go upon another's land to a well and take water." *Ib.*, pp. 106 and 107; *Oliver* v. *Hook*, 47 Md. 301; *Polden* v. *Bastard*, 4 B. & S. 258; *O'Rorke* v. *Smith*, 11 R. I. 259. "There is a wide difference between that which is substantial, as a conduit or water course, and that which is of an incorporeal nature, as a right of way. In my opinion if we were to adopt the principle contended for it would be a most dangerous innovation of modern times. The law seems to me particularly careful and anxious to avoid important rights to land being determined by parol evidence and the prejudices of a jury." CHIEF BARON POLLOCK in *Dodd* v. *Burchell*, 1 H. & C. 113. "The right to go to a well and take water is not a continuous easement nor is it an easement of necessity." *Polden* v. *Bastard*, 4 B. & S. 258. "Continuous are those of which the enjoyment is or may be continual without the necessity of any actual interference by man, as a water spout or a right of light or air. Discontinuous are those the enjoyment of which can be had only by the interference of man, as rights of way, or a right to draw water." *Washburn on Easements*, 19, 4th ed.; *Larsen* v. *Peterson*, 30 Atl. R. 1094. The right claimed here is not within the rule in favor of the implied grant of easements. It is such a right as must be gotten by express grant. In this case it is not the continual flow of water as in the cases cited by the appellant. This is a claim of double easement, a right to take water and a right of way over the land of the defendant, both of which are discontinuous, separate and successive acts involving distinct interference by the owner of the dominant estate with the servient estate. *Gale on Easements*, 4th Eng. ed., pp. 87–89, secs. 50–52; *Larsen* v. *Peterson*, N. J. Ch., 30 Atl. R. 1094.

*Second.* As to the claim of prescription, it is contended by the appellee that no such right is here established. Because the proof does not show such a continuous, uninterrupted, adverse user with the knowledge and acquiescence of the owner of the servient estate as the rule of law re-

quires. *Oliver* v. *Hook*, 47 Md. 301–311; *Cox* v. *Forrest*, 60 Md. 74. The proof shows that the dominant estate was in the possession of tenants from 1878, and that the servient estate was in the possession of tenants from 1864 to 1887, when it was purchased by the defendant. The time of one adverse occupant cannot be united with that of a second, who does not claim under the second by privity of estate. *Washburn on Easements*, pp. 177, 179, 185 and cases cited; *Sargent* v. *Ballard*, 9 Pick. 251; *Holland v. Long*, 7 Gray, 486; *Parker* v. *Framingham*, 8 Met. 260; *Plumer* v. *Brown*, 8 Met. 578; *McGregor* v. *Wait*, 10 Gray, 72; *Schrack* v. *Zubler*, 34 Pa. 38.

Boyd, J., delivered the opinion of the Court.

The appellant sued the appellee for damages alleged to have been sustained by him by reason of the latter's interfering with his use of a well of water in Hancock, Md. We find from the record that Dr. W. H. H. Miller was the owner of two contiguous lots of ground in that town, which he improved by erecting thereon a double brick house. In the rear there was a well of water on or near the division line between the two houses. There was a fence dividing the lots connected with the two houses, and in the fence there was a gate near the well. During Dr. Miller's ownership of the property he occupied the west side and rented the east side. He and his tenants used the well in common, and he testified that " the well of which I have spoken and the houses were so constructed that the occupants of both sides of the house could have free access to the well for the use of the water ;" that the tenants " were entitled to the use of the water, and the houses were so constructed so as to give them the undivided right to it." While that condition of affairs continued, on November 22, 1856, Dr. Miller sold the west side of the property to Lewis B. Evans, who on the 12th day of July, 1859, conveyed it to Dr. James B. Delaplane. The latter having died, it became vested in his widow and children, and the appellant claimed under them

as their tenant.    On May 7, 1864, Dr. Miller conveyed the
east side to Henry Fite, who on March 11th, 1887, con-
veyed it to the appellee.    None of the deeds mentioned or
refer to the use of the well, or the approach to it by the
owners or occupants of the west-side property, although the
one from Miller to Evans does convey the property, " to-
gether with all and singular the buildings, improvements,
ways, waters, water courses, rights, members, privileges, ad-
vantages and appurtenances thereto belonging or in any wise
appertaining."    Since the conveyance to Dr. Delaplane the
occupants of the west-side property had the uninterrupted use
of the water until the trouble arose that resulted in this
suit.    In 1869 Dr. Delaplane extended his building along
the eastern line of his lot and put a door in the wall where
the gate had stood, and after that the door was used as the
gate had been.    The pump is only three or four feet from
the door, and is close to the wall of the Delaplane house—
the appellee testified that it was from eight to fifteen inches
away.    There is some controversy as to whether any por-
tion of the well is on the west side of the division line
although the pump is on the defendant's property.    Dr.
Miller drew a plat from recollection, and he placed the
division line very near the middle of the well, but he had
not seen the property for many years.    The plaintiff testi-
fied that he undertook to locate the westerly side of the
well by digging down below the foundation of the house,
and there found a stone which looked like the coping of
the well, which projected about eighteen inches west of the
wall of the Deleplane house.    The location of the pump
itself would seem to indicate that some of the wall of the
well was probably on the Delaplane side, and there was
certainly some evidence tending to show that such was the
case.    The appellee on April 1st, 1895, shut up the door
above spoken of and thereby interfered with the use of
the water and cut off the former approach to it—although
there is evidence that he offered to let the appellant and his
family use the well, provided they came in the yard by a

route designated by him. We will have occasion to more particularly refer to the prayers offered, but the main question intended to be presented is whether the owner of the west-side property acquired such a right to the use of the well and the way to it from the door as gives a cause of action against the appellee, who claims he was not aware of any such right before he purchased the property.

As long as one person owned both properties it could not properly be said that an easement existed in favor of one of them, as the owner could not have an easement in his own land. But whilst that is true, it is also well settled that if during the unity of ownership the owner of two properties uses one for the benefit of the other in such manner as would have given rise to the presumption that an easement existed, if the tenements had been held by different persons, then upon a conveyance of the property so used an easement will be granted to the purchaser, provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent, and would be necessary for the reasonable enjoyment of the property conveyed. The difficulty that often presents itself is the determination of the question whether the facts of the particular case before the Court bring it within that class.

There has been confusion in some of the cases because they have not distinguished between *implied grants* of easements and *implied reservations.* By no Court has the distinction been more clearly defined than in the case of *Mitchell* v. *Seipel,* 53 Md. 251, where JUDGE MILLER delivered an able and exhaustive opinion on the subject. The reason for sustaining implied grants is apparent as " a grantor shall not derogate from his grant," and when he intends to limit, restrict or burden the use of property conveyed by him for the benefit of property retained, he should express his intention in language that is not easily misunderstood. Whilst Courts should not be too ready to sustain grants by implication, yet if at the time of the purchase of property there are visible and apparent easements and privileges annexed

to it, which are necessary for its reasonable enjoyment, we must assume that they were taken into consideration when the price was agreed upon and that the use of them was paid for. We are not unmindful of the fact that the owner of two tenements may use each for the benefit of the other in such manner as he would not be willing to continue if he sold one of them, but if the use has been of such character as would induce the public to believe that it was attached to the property and is so to continue, it is but fair to a purchaser that a change of the state of the premises be made before the sale is consummated, or notice be given of the intended change by a provision in the deed, if the vendor does not intend to permit the former use of the premises to continue. That would not be asking too much of the vendor.

In *Janes* v. *Jenkins*, 34 Md. 1, it was said, " Whenever, therefore, an owner has created and annexed peculiar qualities and incidents to different parts of his estate (and it matters not whether it be done by himself or his tenant by his authority), so that one portion of his land becomes visibly dependent upon another for the supply or escape of water, or the supply of light and air, or for means of access, or for beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee as accessorial to the beneficial use and enjoyment of the land." Again it was there said, " The grantor being the owner of both tenements could, for the benefit of the tenement granted, fix upon his remaining tenement any servitude he thought proper. That being so, the relative rights and incidents of the two tenements must be taken as fixed at the time of severance by the first grant; and unless restrictive words are used, each will retain as between the two all such incidents and easements as are then openly and visibly attached to and used by it." It is true there have been many decisions to the effect that an ordinary way, not being a way of necessity, which has been used during the unity of ownership, will not

pass upon a severance of the tenements unless proper terms are employed in the conveyance to show an intention to create the right *de novo*.  It was so held in *Oliver* v. *Hook*, 47 Md. 301.  But there are a number of cases which hold that ways may be so improved and well defined as to bring them within the class of easements, or *quasi* easements, known as continuous and apparent, and hence pass by implied grants.  The tendency of many modern decisions has been to broaden the meaning of the term " way of necessity," so as to pass " ways " by implication.  In the case of *Burns* v. *Gallagher*, 62 Md. 462, it was held that the right to the use of the alley in controversy was vested in the plaintiffs by implied grant, or rather by way of estoppel.  A man named Coffay was deemed by the Court to be the real owner of three adjacent lots which fronted on Eager street, in Baltimore City, and were designated in the opinion as the western, central and eastern lots.  Decker street was on the easterly side and a three-foot alley on the westerly.  In the rear an alley a little over two feet wide was laid off, which was fenced on each side and was used in common by the occupants of the three houses for many years.  It was the only way of ingress and egress to and from the back yard of the central lot, except through the front door.  In 1865 Coffay purchased, and paid for, the three lots from one Sanders, but only took a deed for the eastern lot.  In 1866 Sanders, at Coffay's instance, conveyed the western and central lots —the latter to Arthur Gallagher, under whom the plaintiffs claimed.  In 1867 Coffay sold the eastern lot to the defendants, and no reservation was made in the deed to them in respect to the alley.  The defendants closed the alley and obstructed the drainage of water that ran from a hydrant which was upon the division line, between the central and eastern lots, for which suit was brought.  This Court referred to the well-settled principle that all apparent easements, or *quasi* easements, which are necessary to the reasonable enjoyment of the premises granted, and which have been and are at the time of the grant used or allowed to be

used by the owner of the entirety for the benefit of the part granted, will pass to the grantee by implication, and held that Coffay was bound and concluded in respect to the easement over the eastern lot retained by him, and that the defendants claiming and holding under Coffay with notice were equally bound.  The Court said, " The general principle of law is that where a person makes a grant or conveyance of property, he impliedly grants that also which is necessary to make the grant or conveyance of the principal subject effectual and beneficial ; and in this case we must suppose that it was the intention, as doubtless it was the expectation of the parties, that the premises sold and transferred to Gallagher should be used and enjoyed with the same easements and privileges with which they had previously been used and were then enjoyed," and sustained the right of the plaintiffs to the use of the alley.

In the case now before us there is evidence to the effect that the well was, at the time Dr. Miller sold the lot to Dr. Delaplane's grantor, used by the occupants of both properties as if it belonged to both, and that it was so used that it could fairly be inferred that it was the intention and expectation of the parties that the use of it should continue after the sale.  The *quasi* easement was apparent—it was visible to any one going upon the premises.  In addition to the fact that there is some evidence that at least a part of the well is on the Delaplane property there has been either a gate or a door on the division line since the houses were built by Dr. Miller.  Prior to 1869 there was a gate in the fence, and since then a door in the wall of the Delaplane house, which was then extended along the division line. The door is where the gate was.  There was for nearly thirty years before the defendant purchased his property an uninterrupted user of the gate or door, the approach to the well and of the well itself by the occupants of the Delaplane property.  The door and gate were only three or four feet from the pump, and according to the testimony offered on behalf of the plaintiff, Dr. Delaplane and his

heirs had always contributed towards keeping the well in proper condition. It was not an occasional use of such privileges that was required, but a daily and probably, during parts of the day, almost hourly use of them. Nor was it of such character as to suggest a mere temporary or permissive use of the well. The houses were originally constructed with reference to it, and it has been used by the occupants of both houses from that time to the day the defendant obstructed the way. There was then evidence tending to place it in the class of continuous and apparent easements. That there was some evidence that it was necessary for the reasonable enjoyment of the property purchased we think must be conceded. The plaintiff testified that since the interference of defendant he was required to send three or four hundred yards for water—" about three hundred yards away, one-half the distance being up a steep hill, and that was the best and nearest supply he could get." It is not so stated, but that may be subject to the control of some other person. There is nothing in the record to suggest that there would be any reasonable assurance of obtaining water by digging a well on the Delaplane property. To show that there was some evidence of notice to the defendant of the existence of the easement when he purchased, it is only necessary to recall some of the facts we have already stated. The door in the wall that had been there for eighteen years and the location of the pump indicating that the well was partly on the other side ought to at least have put him on inquiry. In *Janes* v. *Jenkins, supra*, it was said, " As the wall had been erected and the lights therein were plainly to be seen when the appellant purchased the property overlooked by them, it is but rational to conclude that he contracted with reference to that condition of the property, and that the price was regulated accordingly." So in *Burns* v. *Gallagher, supra*, the notice to the defendants was through the condition of the alley when they purchased. The recent case of *Ormsby* v. *Pinkerton*, 159 Pa. St. 458, presents facts very

similar, although not so strong as those in this case, and goes very far towards supporting the position of the appellant.

Other authorities might be cited, and some of those relied on by the appellee distinguished from this case, but it is unnecessary, as we think there was sufficient evidence on all the material questions to be submitted to the jury, and there was therefore error in granting the defendant's prayers—the first of which instructed the jury that the plaintiff had offered no legally sufficient evidence to entitle him to recover, and the second that under the pleadings and evidence he was not entitled to recover.

The plaintiff's first prayer ought to have submitted to the jury the question whether the use of this well was necessary for the reasonable enjoyment of the property, and also whether at the time of the sale from Fite to the defendant the well was so used and the state of the premises such as to be notice to the defendant that there was this servitude on the property purchased by him. The prayer was defective in not submitting those questions. His second prayer was properly rejected although the theory of it that this easement could be acquired by prescription is correct. But the latter part of it *assumes* that there was a continuous user by the owners and occupants of the Delaplane property since 1856. The third was also properly rejected. It asked the Court to instruct the jury that if they found that the defendant knew that the plaintiff had a right to use the doorway so as to get water then they were not confined to the actual damages sustained by the obstruction nor the inconvenience and expense the plaintiff was subject to, "but may find such further damages as the facts and circumstances accompanying the acts of the defendant may warrant, taking also into consideration the motives of the defendant."

It proceeds upon the theory that the plaintiff was entitled to punitive damages merely because the defendant had knowledge of the plaintiff's right to use the doorway, &c.

As we have indicated above proof of such knowledge, or of facts that impute such notice, was necessary to entitle the plaintiff to recover under the first prayer, and therefore it would be equivalent to saying that if they find for the plaintiff under the facts mentioned in that prayer the jury must allow punitive damages. There is no such evidence of a malicious motive or of wantonness in the record, as would justify the allowance of such damages.

For error in granting defendant's first and second prayers the judgment must be reversed.

> *Judgment reversed with costs, and new trial awarded.*