# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed April 18, 1927.

---

JAMES T. KNIGHT
VS.
JOHN O. MITCHELL.

---

*Wm. H. Surratt* and *Paul R. Hassencamp* for plaintiff.

*C. Alex. Fairbank* and *Raymond S. Williams* for defendant.

---

STEIN, J.—

By this bill, the plaintiff seeks to restrain the defendant from enlarging the back building of his premises at the west corner of Eutaw Place and Robert street, this city; alleging the so doing will permanently injure an easement of light and air, charged on the defendant's property, in favor of the plaintiff's. Defendant in his answer denies such easement.

Testimony taken in open Court shows that: Dwight D. Mallory and his mother, acquired, at the same time and from the same grantor, two adjacent vacant lots in fee on Eutaw Place; Mr. Mallory, that at the west corner of Robert street; his mother, the other; a dwelling was built on each lot, at the same time by the same builder, from plans drawn by the same architect; on these plans the words "dwelling houses for D. D. Mallory were indorsed"; the defendant owns the corner, known as number 1900 Eutaw Place; the plaintiff owns the other, known as number 1902 Eutaw Place; while they were being built an opening was left between the cellar of the two houses; a witness, who saw the building of the houses, testified that this opening was left for convenient access of the workmen to both dwellings; that when the houses were finished it was bricked up; the plans call for a covered areaway, running between the two houses; from the line of Eutaw Place to the end of the main building of and under the second floor of No. 1902; giving access from the front to the rear of that house. A stable on the rear of number 1900, at one time had a door opening into the yard of number 1902; this door is now closed; the back building of each lot sets back varying distances from the title line dividing them; that of number 1902, at its beginning, sets back about two feet from this line; at its end, sets back about five feet five inches; the back building of number 1900, at its beginning sets back about fifteen feet, and its end sets back about twenty-one feet from this line; thus leaving between these back buildings an open space, about eighteen feet wide at its narrowest width, and about twenty-seven feet wide at its greatest width; which a board fence along the title line of these lots, divides into two pieces of unequal width; that, within the title lines of No. 1900, is much wider, than that between the title lines of No. 1902; the dining-room and kitchen of No. 1902 run along the west side of this open space, and are opposite the back building of No. 1900. The distances between the back buildings of these houses gives to each more light and air than if one or both of them either were on or nearer to the division title line of these lots.

Mrs. Mallory lived in 1902, until she died in 1892, intestate and unmarried; Dwight D. Mallory lived at the corner house until he died in 1922.

At the death of his mother, Dwight D. Mallory became seized of an undivided moiety in number 1902, acquired the other moiety by deed, so

became seized in fee of both properties. He never lived in No. 1902 but rented it, first to a Mr. Luddington, when the cellar opening between the two houses had been closed. By deed, dated October 7th, 1912, Mr. Mallory conveyed No. 1902, and the lot whereon it stands, to William Sauer and wife in fee; under whom the plaintiff claims; Mr. Mallory lived in the corner house from the time he built it until he died in 1922. A niece, Mrs. Slagle, under whom the defendant claims, acquired the corner lot in fee under Mr. Mallory's will.

The devolutions of the titles of the parties hereto, to each of these lots, are not recited in detail as the only question is, does the deed, from Mallory to Sauer and wife contain an implied grant of an easement of light and air, charged on the defendant's lot in favor of the plaintiff's?

The bill charges that in making the contemplated improvements the defendant dug up and destroyed underground storm water and sanitary sewer drains, appurtenant to and necessary, for the use of the plaintiff's house; which drains ran across the rear of the defendant's lot; the testimony shows there were and are no drains from the plaintiff's property running across the defendant's lot; the bill also charges that when erected, the contemplated improvements will cause a destruction of view; this charge was not pressed at the hearing, so that, the plaintiff's claim is that the above named deed of number 1902, from Mallory to Sauer and wife, contained an implied grant of an easement of light and air in favor of the plaintiff's property, charged on the defendant's. The testimony shows that the defendant's contemplated improvements are: the building on his lot of a one-story brick structure to within about two feet from the title line between his and the plaintiff's lot, the roof of which structure will be about one foot higher than the top of the windows of the dining room and of the kitchen of the plaintiff's house; that when finished these improvements will lessen the light and air he now enjoys; his dining-room and kitchen made darker; his implied easement of light and air impaired; and his property permanently injured, which contemplated injuries the plaintiff claims under the doctrine laid down in Janes vs. Jenkins, 34 Md. 1, are restrainable by injunction.

When Dwight D. Mallory became seized of the fee-simple estate in both properties, such easement, as that claimed if it existed and all other existing easements were merged and extinguished in the one ownership.

"A party cannot have an easement in his own land, as all the uses of an easement are fully comprehended and embraced in his general right of ownership." Oliver vs. Hook, 47 Md. 301 at 308. Eliason vs. Grove, 85 Md. 215 at 225.

While the deed from Dwight D. Mallory to William Sauer and wife contains a "together clause" in the form then and now in general use in this city, it does not contain any mention of or reference to the easement claimed; so that such easement if it existed then, could pass under the Sauer deed, only by implied grant.

"Upon the severance of an heritage, a grant will be implied, first, of all of those continuous and *apparent* easements, which have been in fact used by the owner during the unity and which are necessary for the use of the tenement conveyed; though they have no legal existence as easements, and secondly, of all those easements without which the enjoyment of the several portions could not be had at all."

Oliver vs. Hook, Ibid, pp. 308 and 309.

This doctrine of "implied grant" was first recognized in Maryland, in the case of Cherry vs. Stein, 11 Md. 1, in which the Court of Appeals held (page 24):

"If a man is owner of two adjoining lots of land, one of which is vacant, the owner, having upon it a building with lights overlooking the former, and he should sell the latter without any exception, or any reservation of a right to build on the vacant lot, or to stop the lights in the building sold by him, he cannot afterwards lawfully obstruct those lights, and as he cannot do this himself, neither can he convey to another the right to do it."

This doctrine was recognized in Janes vs. Jenkins, 34 Md. 1 at 6, in the following language: that in such cases there will pass to the grantee *all continuous and apparent easements* as may be at the time of the grant, in use for the beneficial enjoyment of the parcel granted; and this by implication."

Thereafter the Court of Appeals discussed this doctrine many times, the

last time in Tong vs. Feldman, in an opinion filed March 3rd, last, published in The Daily Record of the 8th, which involved the somewhat analogous doctrine of implied reservation of an easement; in its opinion the Court reviewed many of its former decisions on the doctrine of "implied grant" which is here involved.

In addition to the requirement of necessity, whether it be "a case of the strictest necessity" in cases of implied reservation (as stated in the Tong Cases, supra), or a reasonable necessity as stated in some of the earlier cases referred to in the Tong case; the Court of Appeals laid down other requirements must exist before the doctrine of "implied grant applies."

"Such easement must be continuous, apparent and necessary for the reasonable enjoyment of the property granted."

Eliason vs. Grove, 85 Md. 215 at 225.

"It is well settled that if during the unity of ownership the owners of two properties use one for the benefit of the other in such manner as would have given rise to the presumption that an easement existed, if the tenements had been held by different persons, then upon the conveyance of the property so used an easement will be granted to the purchaser; provided that use has been such that the easement resulting from it should be of the class known as *continuous and apparent* and necessary for the reasonable enjoyment of the property conveyed."

Dinneen et al. vs. The Corporation, 114 Md. 589 at 594.

In Butterworth vs. Crawford, 46 N. Y. 349, it was held: "There must be some mark or sign which would indicate the existence of the easement, i. e., an apparent sign of servitude must exist on the premises purchased in favor of the adjoining owner or the marks of its burden must be open and visible." To the same effect is Ingalls vs. Plamondon, 5 Ill. 118.

The record here does not contain any testimony gratifying these rules. If Sauer and wife, when they bought No. 1902 Eutaw Place from Mr. Mallory, had examined it, they would not have seen anything indicating a mark or burden of any use of No. 1900 for the benefit of No. 1902; they would have seen two adjacent houses, divided by the usual board fence, which apparently ran along the title line be-

tween them; with the back building of each house setting back from this fence; as in almost every house in this city; they would not have seen any open evidence of use, such as that of a well on the dividing line as in Eliason vs. Grove (supra); nor eaves projecting over the lot of 1900 so as to throw on that lot the water from the roof of No. 1902, as in the case of Cherry vs. Stein (supra); or shutters opening over or fire escapes leading into a vacant space in common use by both houses, as in many of the reported cases; would not have had, as in Janes vs. Jenkins (supra), constructive record notice of a covenant allowing windows in No. 1902 to overlook No. 1900; nor the actual notice given by overlooking windows in a wall built along the title line dividing the lot; they would not have seen an open visible right of way in actual use as in Dinneen vs. The Corporation (supra); so that they would not have seen any clearly visible marks or signs indicating a visible easement of light and air necessary for the reasonable enjoyment of No. 1902, the property they were about to buy and charged on the lot next door which the defendant now owns.

The opinion in Janes vs. Jenkins (supra) shows there was a covenant allowing windows in any building erected on the lot leased, to overlook the lessor's adjoining vacant lot; the Court of Appeals held that to allow the covenantor or his successor in title to build on the vacant lot so as to shut up the windows authorized by the covenant, would allow a covenantor to derogate from his own grant"; and refused to allow this to be done.

In Cherry vs. Stein (supra), page 21, the Court of Appeals refused to recognize the doctrine of ancient lights as existing in Maryland, as applicable in this State; and held that to adopt it, would greatly interfere with and impede the rapid change and improvement constantly going on in our cities and villages.

In this city, an owner usually builds dwelling houses in rows; the back building of each house save the corners, setting back from the lot line between it and the adjacent house. To adopt the rule for which the plaintiff here contends means, that as each house so built is conveyed, an implied easement of light and air is charged on the adjacent house retained by the

grantor; the grantees of the houses so conveyed would have the right to build up to the division line between the houses, and could prevent the owner of the adjacent house from building up to that line. Here, if his contention is correct, the plaintiff has the right to build to the division fence; but the defendant cannot build up to that fence, even though one part of the back building on his lot is within two feet of this fence, he cannot build on other parts of his lot, to that distance from this fence, although some of such parts of his improvements are twenty-one feet from the fence.

If correct, the plaintiff's contention would have required the defendant when about to buy his above property, to have known that it and the adjacent house once were owned by the same person, who, while owning both, had charged on that the defendant was about to buy an easement of light and air, in favor of the plaintiff's house, without any visible evidence that such easement existed.

To impose such knowledge on a buyer in many cases would require a title examination and survey.

Inquiry from the occupant of the adjacent house would not suffice, the occupant might not be the owner, might not know of the existence of such easement; might refuse to answer such inquiry, might wilfully or innocently answer wrongfully, or might set up a false or unfounded claim to an easement; all of which would unduly restrict the improvement and sale of property, and be contrary to the spirit of our recording system.

I will sign a decree dismissing the bill, the plaintiff to pay costs.